*Southern District*

No. 40

**ORA SILVIA**

**v.**

**EMCO DRESS COMPANY, INC.**

Argued: Sept. 7, 1972 - Decided: Feb. 12, 1973

*Present:* Murphy, P.J., Covett, Rider, JJ.
Case tried to *Bento, J.* in the First District
Court of Bristol, No. 551 of 1965.

**Covett, J.** This is an action of tort to re-
cover damages for injuries sustained by the
plaintiff when she fell on ice on a walk ad-
joining the exit door of the mill building in
which the defendant, her employer, had its
factory. The declaration is in three counts.
Count 1 alleging the defendant's alleged fail-
ure to furnish a reasonably safe means of
egress from the defendant's factory for the
plaintiff, defendant's employee; that as a re-
sult thereof the plaintiff fell on ice, and that
the plaintiff gave the statutory notice. Count
2 alleges that the defendant was negligent as
the result of which the plaintiff suffered per-
sonal injuries; and that the defendant was
not a subscriber under the workmen's com-
pensation law. Count 3 alleges that the defen-
dant negligently allowed its premises to be-
come unsafe for the use of the plaintiff while
she was an employee of the defendant as the
result of which the defendant fell on ice suf-
fering personal injuries.

The answer, insofar as material, is a general

denial, a denial of notice and a plea that the defendant is an insured person under G.L. c. 152.

The court found for the plaintiff in the sum of $3,200.00 with interest.

**At the trial there was evidence tending to show:**

In 1963, the plaintiff was employed by the defendant as a sewing machine operator. The defendant was a tenant in the mill building in which the plaintiff worked and occupied the fourth floor of' that building. Other tenants occupied other parts of that building. The owner of that building was Fall River Properties, Inc. There was a parking lot near the rear of the mill building. The parking lot was also owned by Fall River Properties, Inc., and was maintained for the use of the employees of the tenants of the building. A pathway led from the door of the building to the parking lot. The pathway was approximately ten feet in length, and was the usual means of' entrance and egress to and from the building and parking lot and was used in common by the employees of the tenants. The defendant operated a sewing business as a "contractor". As such "contractor" it did work for Berkshire Frocks, Inc., and other companies. Berkshire Frocks, Inc. was a "manufacturer" which contracted out its excess sewing work to independent sewing companies like the defendant. No one from Berkshire Frocks, Inc. supervised the

work in the defendant's shop. The nearest plant owned and operated by Berkshire Frocks, Inc. was in Boston, some 50 miles from defendant's plant.

On December 18, 1963, the plaintiff worked only on Berkshire Frocks, Inc. dresses in the defendant's shop.

As a manufacturer of dresses, the work of Berkshire Frocks, Inc. consisted of cutting cloth and sewing that cloth together with trimmings into completed dresses. When its own personnel could not complete the sewing of all its dresses to meet its commitments, Berkshire Frocks, Inc. sent to the defendant and other contracting shops portions of Berkshire Frocks, Inc.'s cut cloth and trimmings for the purpose of having them sewed together into dresses by the contracting shop's employees. Thereafter, the completed dresses were shipped to Berkshire Frocks, Inc.'s factory in Boston, which distributed them as its own name brand products.

On December 18, 1963, the plaintiff ran out of work shortly after 2:00 P.M. and was told by her forelady to go home. It was a cold day. When the plaintiff left the mill building through the door leading to the parking lot, she took two or three steps on the cement walk leading from that door and slipped on ice. She suffered injuries to her back. December 18, 1963 was a Wednesday. On Friday, she drove to the defendant's factory and arrived

there approximately 7:30 A.M. She spoke to the office manager of the defendant and told her how the accident happened. The office manager wrote it down and the plaintiff signed it. The plaintiff does not know what the office manager wrote, and does not know the contents of the paper which the plaintiff signed.

It was agreed by both parties, in open court, that the plaintiff did not reserve her common law rights of action.

It was agreed by both parties, in open court, that at all times material hereto, Berkshire Frocks, Inc. was an insured person under workmen's compensation law.

It was also agreed in open court, by both parties, that, at all times material, hereto, the defendant had three or more employees and was not a self-insurer nor a subscriber.

At the close of the trial, and before the final arguments, the defendant made the following requests for rulings which are material to the issues in this case:

1. The plaintiff gave no written notice. In order to recover in this action, plaintiff must show by a fair preponderance of the credible evidence that she or someone in her behalf gave written notice of the time, place and cause of her alleged injury, to the defendant, within thirty (30) days after she suffered such injuries.

2. The giving of the written notice required

by G.L. c. 84, section 21, in this case, is a condition precedent to the existence of the cause of action; there is not a cause of action until after the compliance with that condition.

3. The requirement of written notice in this case is not affected by the workmen's compensation act.

4. On all the evidence and the law, the plaintiff cannot recover in this case, because she failed to give the written notice required by G.L. c. 84, section 21.

5. At the time of the plaintiff's alleged injury, on December 18, 1963, the defendant was an independent contractor, engaged in doing the work of Berkshire Frocks, Inc. within the meaning of G.L. c. 152, section 18.

6. At the time of the plaintiff's alleged injury on December 18, 1963, the plaintiff was employed by the defendant, as a stitcher, and was engaged in stitching dresses belonging to Berkshire Frocks, Inc.

7. At the time of the plaintiff's alleged injury on December 18, 1963, Berkshire Frocks, Inc. was "an insured person" under G.L. c. 152, (Workmen's Compensation Law).

8. The plaintiff did not reserve her common law right of action under G.L. c. 152, section 24 and therefore waived her rights of action versus the defendant at common law.

9. If the plaintiff suffered injuries as alleged, the plaintiff was entitled to receive compensation from the workmen's compensation

insurer of Berkshire Frocks, Inc. under the workmen's compensation law.

10. At the time of plaintiff's alleged injuries, the defendant, was an "insured person" within the meaning of the workmen's compensation law.

11. At the time of plaintiff's alleged injuries, the defendant was not a person "other than insured".

12. Plaintiff has no right of action versus defendant at common law. It is immaterial whether defendant is a subscriber under workmen's compensation law or not.

12.A. If court finds that the plaintiff suffered her alleged injuries two or three feet from the exit door of the building in which the defendant's premises were contained while she was leaving her employment, then it must find that her injury occurred "on, in or about" the premises on which the defendant undertook to execute the work for its insured contractor.

16. The evidence does not warrant any finding that plaintiff's injuries resulted from a cause which defendant may be held responsible to plaintiff.

17. The evidence does not warrant a finding that plaintiff's injuries were caused by defendant's negligence or the negligence of defendant's agents or servants.

18. The defendant is entitled to judgment in this action for the reason that plaintiff

failed to give the defendant written notice required by G.L. c. 84, section 21.

19. The defendant is entitled to judgment in this action for the reason that the plaintiff's sole remedy for her injuries was to seek compensation under the provisions of G.L. c. 152, (Workmen's Compensation Law).

The defendant claims to be aggrieved by the court's denial of all its requests for rulings except 6 and 7 which was granted. The defendant also claims to be aggrieved by the court's finding and ruling that the plaintiff gave the written notice required by G.L. c. 84; that the defendant was negligent, and that the plaintiff was injured on the premises under the defendant's control.

The defendant has based its appeal on the following three issues:

1. Was the doctrine of "common employment" applicable, so as to make the employer an "insured person", relieving it from the coverage of the terms of G.L. c. 152, §66.

2. Was the plaintiff required to give notice to the defendant under G.L. c. 84, §21, and if such notice was required, did the plaintiff give it to the defendant.

3. Was the court warranted in finding that the defendant was negligent.

The defendant concedes, in his argument and brief, that he was required to provide for compensation under the provisions of the Workmen's Compensation Act; that he did

not so provide, by insurance or self-insurance, on the date of the injury; that the plaintiff was an employee of the defendant; and that the plaintiff sustained a personal injury arising out of and in the course of her employment. All the elements of proof in the action of law against the non-complying employer are satisfied. G.L. c. 152, §66.

However, the defendant contends that it should be relieved of the provisions of §66 because at the time the plaintiff sustained her injury, it was performing work for Berkshire Frocks, Inc., who was a subscriber under the act and therefore, was the "statutory employer" whose insurance carrier was obliged to pay the plaintiff compensation for her injuries suffered in this case. The defendant relies upon the doctrine of "common employment". G.L. c. 152, §18.

An excellent discussion of this doctrine is found in Annual Survey of Law (1971) 50 by Laurence S. Locke. The doctrine is based on §§ 15, 18, and 24 of the Workmen's Compensation Act and successive interpretations of these sections by our Supreme Judicial Court. §24 provides that an employee is deemed to have waived his common law right of action to recover damages for personal injuries unless he expressly reserves his right by a written notice to his employer. It is agreed between the parties that the plaintiff did not reserve her common law rights.

§18 imposes on an insured employer the obligation to pay compensation to employees of uninsured contractors doing the insured employer's work, where the work done is part of the business of the insured and not merely ancillary and incidental thereto. The insured employer thus becomes the "statutory employer" of the uninsured subcontractor's employees. §15 establishes the procedure for third party actions in cases where the injury is caused by a "person other than the insured."

"These three sections in combination have resulted in the establishment of a rule governing common law actions for personal injuries suffered by employees of the contractor and of the subcontractor where the work is done under a general contractor who is an 'insured person', that might not be apparent from a mere reading of the statute. The insurance of the general contractor or 'common employer' . . . throws its shadow over the whole work. In that shadow . . . a cause of action for negligence causing a compensable personal injury cannot grow . . . . Since the insurance of the 'common employer' covers and protects all the employees in the 'common employment'. . . one engaged in that common employment as contractor, subcontractor or employee cannot be a 'person other than the insured' within section 15, and the injured employee has no option to sue him at common law . . . . In the application of this rule, it is immaterial

whether the subcontractors are insured or not . . . . The essential thing is the existence of a 'common employer' who is an 'insured person' under section 18 . . . and who is having work done . . . , which work is part of or process in his trade or business . . . ." *Clark* v. *M. W. Leahy Co., Inc.,* 300 Mass. 565, 568, 569.

The doctrine of "common employment" has been subject to much scholarly criticism. See Locke, Workmen's Compensation, section 665; 2 Larson, Workmen's Compensation Law, §§ 72.32-72.33 which was recognized by the Supreme Judicial Court in the case of *Brown* v. *Marr Equipment Corporation,* 355 Mass. 724, 726 and finally abolished by legislative action in 1971. See St. 1971, c. 941. At the time of the injury in this case, the doctrine was still the law.

The doctrine or rule has been appllied to prevent an action brought by the employee of an uninsured subcontractor for personal injuries against the general contractor. *White* v. *George A. Fuller Co.,* 226 Mass. 1; to prevent such an action against a subcontractor by the employee or insurer of the general contractor. *Cataldo* v. *George F. Watts Corp.,* 255 Mass. 605; to prevent such an action against one subcontractor by the employee or insurer of another. *Dresser* v. *New Hampshire Structural Steel Co.,* 296 Mass. 97; *Brown* v. *Marr Equipment Corp.,* 355 Mass. 724; to pre-

vent such an action by one employee or an insurer paying compensation, against another employee. *Bresnahan* v. *Barre,* 286 Mass. 593. *Caira* v. *Caira,* 296 Mass. 448; and to prevent such action by insurer of contractor, paying compensation to his employee, against uninsured subcontractor. *Clark* v. *M. W. Leahy Co.,* 300 Mass. 565.

 The defendant would have us expand the doctrine to bar an injured employee's action against his non-complying immediate employer. No case has been cited by the defendant to support its argument, and our independent research has revealed none except in Florida in the case of *Stone* v. *Buckley,* 132 So. 2d 613. This decision has been severely criticized in 2 Larson, Workmen's Compensation Law, §72.33, pages 212-213. We do not intend to follow this minority view. We can perceive nothing in sound reasoning that would entitle an employer to a grant of immunity for conduct which is punishable as a misdemeanor by fine and imprisonment. G.L. c. 152, §25 C. This would pervert the intent of G.L. c. 152, §66. Defendant's requests for rulings numbered "8", "12" and "19" were properly denied. Requests for rulings numbered "5", "9", "10", "11" and "12A" were correct statements of law if the action were based on a fact situation as in the case of *Clark* v. *M. W. Leahy Co.,* 300 Mass. 565. Their

denial was harmless error as the requests were inapplicable to the facts in this case. The allegation of negligence in Count 2 of the plaintiff's declaration was mere surplusage. *Litchfield* v. *Hutchinson,* 117 Mass. 195, 198. *Wolfson* v. *Fox,* 338 Mass. 603. *Belger* v. *Arnot,* 344 Mass. 679, 681. G.L. c. 152, §66.

The second issue:

 The giving of a notice in a snow and ice case is not a condition precedent to the right to maintain this plaintiff's action. The purpose of G.L. c. 152, §66 as amended in 1943, was to place the employee of an employer who is not a subscriber under the Workmen's Compensation Act as nearly as possible in the same position as is the employee of an employer who is a subscriber. *Zarba* v. *Lane,* 322 Mass. 132, 134. The case of *Whalen* v. *Railway Express Agency,* 321 Mass. 382 cited by the defendant does not apply to a non-complying employer because it was decided on the law preexisting to November 15, 1943, the effective date of St. 1943, c. 529. The defendant's requests for rulings numbered "1", "2", "3", "4" and "18" were properly denied. There was no error in finding for the plaintiff on Count 2 of his declaration.

The third issue:

 We agree that there is no evidence of negligence. The only evidence on this point is "when the plaintiff left the mill building

through the door leading to the parking lot, she took two or three steps on the cement walk leading from that door and slipped on ice''. There is no evidence as to the nature of the underlying surface of the walk, or as to the state of the weather, or as to what caused the ice, where it came from on how long it had been there. See *Collins* v. *Collins,* 301 Mass. 151, 152. Defendant's requests for rulings numbered ''16'' and ''17'' were denied in error.▮

No prejudicial error is found with respect to the finding for the plaintiff on Count 2, therefore an order should be entered dismissing the report as to that count.

As to Counts 1 and 3, the finding for the plaintiff is to be vacated and judgment for the defendant ordered.

**So ordered.**

FRANCIS M. O'BOY
 for Plaintiff
ABNER KRAVITZ
 for Defendant